NOT FOR PUBLICATION

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

\-----------------------------------------------------------------X

In re:

Michael Thomas Grant,

                              Debtor.

\-----------------------------------------------------------------X

Chapter 13

Case No. 19-22949  (CGM)

# MEMORANDUM DECISION DENYING MOTION TO MODIFY PLAN

## Background

Debtors confirmed this chapter 13 plan on October 8, 2020. That plan contained a unique provision, approved by Judge Lane, which allowed the Debtors to keep $8400 of their tax refund (instead of the usual $1500). In 2019, Debtors received a tax refund of $11,777 and want to keep of $9900 of it—not just the $8400 that they are permitted to keep under the plan. The Trustee opposes this request and asks that they turn over the full amount of the refund over the $8400 amount. She argues that the Debtors' failure to make any request in 2020, 2021 or 2022 seeking to retain the 2019 tax refunds is an inexplicable delay that should prove fatal to this requested reprieve of the requirements of the confirmed Plan. The Debtors' waiting 3 years to request this extraordinary relief from the Court is disingenuous as COVID had been in existence 7 months prior to the Plan being confirmed in the first place.

The Debtors are also seeking to reduce their plan payments going forward. The Debtors argue that their expenses have increased while their incomes have decreased. The Trustee disagrees and argues that the Debtors' incomes have increased, and their expenses are artificially inflated.

According to the Trustee, Debtor does not have a reduced income. Rather each Debtors' income has increased since filing. Debtor had an income of $11,740.43 per month and now his income is $14,210.99. The Joint Debtor's income was $5,465.14 at the time of filing, and it is currently $7,515.49. The total household increase is $4,521.91 of adjusted gross income per month. This sizeable increase in household income is also illustrated by the Debtors' tax returns (available for in camera review by the Court) which show the following gross

income history during the pendency of this case:

2019 – $207,983

2020 – $235,086 (Case was confirmed in October 2020)

2021 – $252,253

2022 – $256,055

The amended budget and paystubs show the Debtors are on track to make approximately $260,729 in 2023-- an increase of $4,674 over 2022, an increase of $25,643 over 2020 when the case was confirmed, and represents a $52,746 increase in household income since the case was filed in 2019.

Additionally, the Trustee argues that the Debtors' expenses are not reasonable. At the time of confirmation, the Debtors' budget reflected "Food and

Housekeeping" expenses in the monthly amount of $2,000. The new proposed Schedule J filed on February 23, 2023 lists a "Food and Housekeeping" expense of $2,800 for this household of three. This represents a 40% increase and is unreasonable even given the modest inflation in the economy of approximately 8% over last year's food prices. In comparison, and to provide context for what is reasonable, the IRS National Expense Standards provide for $903 for food and $74 for housekeeping for a total of $977 for a three person household as of April 1, 2023.

The Trustee is aware of Mrs. Grant's medical bills and dental issues per the prior history in this case and the subsequent information provided by Counsel. These items were factored into the Debtors' budget at the time of confirmation which provided for $450/month medical and dental expenses amounting to $5,400 over the year. The Trustee is confused by the allegation in the motion that "[i]n 2022, [Mrs. Grant] incurred over $3,000 in medical bills, not all paid." It remains unclear why the budgeted amounts of $5,400 were insufficient to cover the $3,000 of medical bills for 2022. Counsel has represented to the Trustee that the $200.00 monthly payment for the Debtors' son's braces is scheduled to end in March 2023 and this sum is currently factored into the amended budget Medical/Dental monthly sum of $1,340.41.

The Debtors' amended budget show an increase for personal care products and services from $175 at the time of confirmation to $225 as of the February 23, 2023 filing—an unreasonable 29% increase. In comparison, and to provide context for what is reasonable, the IRS National Expense Standards provide for $78 for a three person household as of April 1, 2023.

The Debtors' amended budget also includes a substantial increase in sums for home maintenance and upkeep rising from $275 at the time of confirmation to $670 now. This amount represents a significant 143% increase. Part of this expense includes a cleaning person costing $144 each month.

Debtors are also seeking to modify their plan to decrease the amount of tax refunds they can retain to the usual $1500 per Debtor. The Trustee supports this modification.

In response to the Trustee's opposition, the Debtors' filed a reply. They argue that Mrs. Grant has medical issues and a special diet. They argue that their car leases expired and they needed to get leases that cost more. Debtors' admit that they have increases incomes but argue

its only $1797.47 more per month, not $4500. Debtors' argue that they are struggling to make ends meet on their current budgets. Their reductions read like someone who is not currently in bankruptcy: "We cut out purchasing morning coffee on the way to work and make our own coffee and breakfast at home before going to work. I also rarely buy lunch in the city due to the increased prices. I will either bring leftovers or even forgo eating lunch at all (and just have a small snack instead). Due to our work schedules we do order in for dinner a few nights during the week. I do not get home until 6:30-7pm and my wife gets home around 6pm, except when she is not working a late night until 8pm. Our son is also involved in Boy Scouts on Thursday night, and has track practice and sometime meets during the week when he gets home late. This now 16 year old son that has an increased appetite as a teenager. He is very athletic, runs track, and we try to keep up with his increased desire to eat, but we have worked on limiting that as well. We have limited our son from going out to eat lunch at local restaurants/delis around school during free periods because of the increased cost over eating lunch at school."

"As far as, home maintenance, we do have a pest control contract because we have a bee/wasp problem every year that needs to be addressed. We have a wood shed where we have had nests, as well as, in the eaves of our roof. Stephanie and my mother-in-law are highly allergic to bees and my mother-in-law lives nearby and visits often (she helps us occasionally with our son since we work late).
We cannot take a chance that she gets stung by a bee, so we have someone come out and spray as a preventative measure and also come out if needed to remove a hive (which is expensive without a contract). This is a modest $48.38 per month."

### Discussion

Section 1329 allows a plan to be modified post-confirmation. 11 U.S.C. § 1329(a)(1). Section 1329 also requires that a modified plan meet the requirements of sections 1322(a), 1322(b), 1322(c). 11. U.S.C. 1329(b)(1). A prerequisite to modification of a confirmed chapter 13 plan is that there be a material or substantial change in circumstances, such as a change in a debtor's income or expenses, that was not anticipated at the time of confirmation. In re Gallagher, 332 B.R. 277, 283 (Bankr. E.D. Pa. 2005).

**Tax Refunds**

Modification is not limitless. Section 1329 provides for "three circumstances allowing modifications: to increase or reduce payments to a particular class of claims, to extend or reduce the time for payments, and to alter the amount of distributions to a particular creditor to take into consideration payments other than under the plan." *In re Young*, 370 B.R. 799, 803 (Bankr. E.D. Washington 2007). "Forgiveness of prior plan defaults is not among these allowable reasons for modification." *Id.*

With regard to the tax refunds, what Debtors essentially request is forgiveness for not turning over their tax refunds as required by their plan. This is not among the allowable reasons for modification. Notably, debtors request relief after they have already spent the tax return funds. Should creditors' expected dividends diminish, notice should be given to creditors before the funds disappear or within a reasonable time thereafter. *See id.* at 804.

**Decreased Plan Payments**

The purpose of § 1329 is to allow modification of a confirmed plan should circumstances change during the life of the plan. *Martinez v. Viegelahn*, 581 B.R. 486, 495 (W.D. Tex. 2017). There is no easily applied standard a court may use to determine whether to grant a motion to

modify a chapter 13 plan. Bankruptcy courts in the first circuit require the movant to present a "legitimate reason" for modification. *See In re Murphy*, 487 B.R. 86, 94 (Bankr. D.R.I. 2013); *see also In re Pinet*, 2017 Bankr. LEXIS 1049, at *10. One bankruptcy court has stated that the only prerequisite to look for is that there exist "a change in the debtor's financial condition postconfirmation." *In re Scholl*, 605 B.R. 163, 178 (Bankr. S.D. Ohio 2019). Ultimately, the decision regarding modification rests with the discretion of the court. *In re Prieto*, 2010 Bankr. LEXIS 3379, *7 (Bankr. M.D. Fl. 2010).

In the past, courts in this district limited grants of modifications to "situations in which there has been a substantial and unanticipated change in the debtor's income or expenses that was not anticipated at the time of the confirmation hearing." *See In re Solis*, 172 B.R. 530, 532 (Bankr. S.D.N.Y. 1994). In *Salpietro*, 492 B.R. 630, 636 (Bankr. E.D.N.Y. 2013), Judge Grossman determined that the "substantial and unanticipated test" should not be the threshold for determining whether to modify a chapter 13 plan post-confirmation. Instead, that court held that it had discretion to determine when post-confirmation modification was appropriate, within the bounds of the statute. The court cautioned that the court's discretion in approving modification under Section 1329(a) must be "guided by a respect for the finality of the confirmation process balanced by the powers bestowed on a bankruptcy court to issue orders necessary to prevent an abuse of the bankruptcy process and enforce Court orders." *Id.* at 637.

Under 1322(a)(1), the debtor must submit to the supervision and control of the trustee all future earnings that are necessary for the execution of the plan. 11 U.S.C. § 1322(a)(1). A debtor's failure to commit to a plan a realized increase in his or her income may put that debtor out of compliance with his or her plan and section 1322(a)(1). *In re Salpietro*, 492 B.R. at 639.

Increased earnings may provide a basis for approving a motion to modify a confirmed plan in order to increase plan payments.

Here, the Debtors is seeking to decrease plan payments where the Trustee has shown that the Debtors' income has increased since confirmation and where the Debtors' expenses have significantly increased since filing—in a manner that is not reasonable and not in line with the IRS' expense standards. The Debtors have not met their burden of demonstrating that they are entitled to a decrease in plan payments. If anything, it appears their income has increased.

As to the prior tax refund monies, those are due to the trustee under the current plan and must be paid. As to whether the Debtors' payments may be reduced, the Debtors' admit that their income has increased. Even if the Debtors' increased expenses were reasonable, which they are not, the Debtors should be able to cover those with their increased monthly income. There is no reason why the plan payments should be reduced.

## Conclusion

For the foregoing reasons, the motion to modify plan is denied. The Trustee shall submit an order in conformance with this decision.



**Dated: April 26, 2023**
**Poughkeepsie, New York**

/s/ Cecelia G. Morris
_____
**Hon. Cecelia G. Morris**
**U.S. Bankruptcy Judge**